UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN K. MAUDE,<br><br>          Plaintiff,<br><br>    v.<br><br>CIRO BARBOZA, et al.,<br><br>          Defendants. | Case No. 22-cv-03405-HSG<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 41 |

Pending before the Court is Defendant Ciro Barboza's motion to dismiss. Dkt. No. 41. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **DENIES** the motion.

## I.     BACKGROUND

Plaintiff Erin K. Maude initially filed this action pro se in June 2022. Dkt. No. 1. She is now represented by counsel and has filed an amended complaint. Dkt. No. 37 ("FAC"). Plaintiff alleges that her children were forcibly removed from her custody without notice or opportunity for a hearing. *Id.* Specifically, Plaintiff alleges that in in 2020 her two children told her that they had been sexually molested and abused by their stepmother, the wife of Plaintiff's ex-husband. *See id.* at ¶¶ 12–15. Several mandatory reporters, including Defendant Ciro Barboza, a detective with the Salinas City Police Department, reported the abuse to Child Protective Services ("CPS"). *Id.* at ¶¶ 5, 16. Both CPS (through its investigator Francis Magbag) and the Salinas Police Department (through Defendant Barboza) investigated the allegations, but ultimately concluded that they were unfounded. *Id.* at ¶¶ 17–23. Plaintiff states on information and belief that CPS then wrote a report concluding "that the children were improperly cared for by [Plaintiff]." *Id.* at ¶¶ 17,

23. CPS concluded that Plaintiff failed to provide the children adequate psychiatric care for the anxiety they experienced from recounting the alleged abuse during the course of the investigation. *Id.*

Plaintiff alleges that on May 7, 2020, Defendant Barboza and Mr. Magbag removed the children from her custody and "forcibly placed them in the custody of their father" without any prior notice to Plaintiff. *Id.* at ¶¶ 24, 26. Plaintiff asserts that one of the children tried to flee, and when law enforcement officers contacted the Salinas Police Department about the situation, they "were told that [the] father had full custody, despite the fact that no court order granted custody to [the] father . . . ." *Id.* at ¶ 25. Plaintiff further suggests that Defendant Barboza and Mr. Magbag mishandled the investigation and "created paperwork" to justify their actions "out of malice toward Plaintiff." *See, e.g.*, *id.* at ¶¶ 17, 24, 26. On May 12, 2020, the Superior Court of Monterey County concluded in a "temporary" custody order that the children's father should have sole custody. *Id.* at ¶¶ 28–29, 31. Plaintiff contends that this was based, in part, on her ex-husband's false representations "that CPS has told him that the children should not have any contact with their mother and that CPS had given him 'full custody.'" *Id.* at ¶ 28. For the past three years, Plaintiff has unsuccessfully attempted to regain custody of her children. *See id.* at ¶¶ 31–33.

Based on these allegations, Plaintiff brings a single cause of action against Defendant Barboza under 42 U.S.C. § 1983 for violating her due process rights by removing the children from her custody without notice and an opportunity for a hearing.[1] *See id.* at ¶¶ 34–42. Defendant Barboza now moves to dismiss the complaint. Dkt. No. 41.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

---

[1] Plaintiff initially brought this case against both Defendant Barboza and Mr. Magbag, but in March 2023 Plaintiff voluntarily dismissed the case against Mr. Magbag without prejudice. *See* Dkt. No. 38.

2

1  granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the
2  complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."
3  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule
4  12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible
5  on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible
6  when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that
7  the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
8      Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a
9  claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity
10 the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317
11 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how"
12 of the alleged conduct, so as to provide defendants with sufficient information to defend against
13 the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent,
14 knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.
15 Rule 9(b).
16     In reviewing the plausibility of a complaint, courts "accept factual allegations in the
17 complaint as true and construe the pleadings in the light most favorable to the nonmoving party."
18 *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,
19 courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of
20 fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
21 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## III. DISCUSSION

Defendant Barboza argues that Plaintiff has failed to state a plausible due process claim against him, and that in any event, he is entitled to either absolute or qualified immunity. *See* Dkt. No. 41.

### A. Failure to State A Claim

Defendant argues that Plaintiff has not stated a plausible due process claim against him because there were hearings about the custody of Plaintiff's children, and because in any event,

3

her allegations that Defendant interfered with any of her parental rights are too speculative. Dkt. No. 41 at 9–10.

### i. Initial Complaint

Defendant first suggests that to the extent Plaintiff alleges in the FAC that she was not given the opportunity for a hearing about the custody of her children, this contradicts the allegations in her prior complaint. *See* Dkt. No. 41 at 9–10. Plaintiff previously alleged that "[o]n May 10, 2020, the Superior Court of Monterey County held a hearing on the issue of custody over Plaintiff's children," and Judge Sam Lovorato, Jr. ruled that Plaintiff's ex-husband "should have sole physical and legal custody with no visitation by Plaintiff." Dkt. No. 1 at ¶ 20. Plaintiff omitted this allegation in the FAC, instead arguing that on May 12 "the Superior Court of Monterey County made an *ex parte* order on the issue of custody over Plaintiff's children." FAC at ¶ 28.

But as this Court has previously explained, "Ninth Circuit precedent is inconsistent as to whether amended pleadings may ever contradict earlier allegations." *Hernandez v. Schaad*, No. 17-CV-04055-HSG, 2017 WL 6731624, at *3 (N.D. Cal. Dec. 29, 2017) (citing *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) and *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007)). In *Airs Aromatics*, the Court agreed that leave to amend would be futile because "[a] party cannot amend pleadings to directly contradic[t] an earlier assertion made in the same proceeding." 744 F.3d at 600 (quotation omitted). But in *PAE*, in contrast, the Ninth Circuit explained that absent a showing that the party acted in bad faith, "[t]he short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." *See* 514 F.3d at 856; *accord Allen v. City of Arcata*, 691 F. App'x 461, 463 (9th Cir. 2017) ("[N]othing in the Federal Rules of Civil Procedure prohibits inconsistent pleadings."). Like many courts in this district have concluded, "[t]his Court cannot follow both Ninth Circuit lines of cases at the same time," so "elects to follow the *PAE* line of cases, which is more consistent with the Ninth Circuit's liberal policy favoring amendment." *Kanaan v. Yaqub*, No. 21-CV-09591-BLF, 2022 WL 3357834, at *4 (N.D. Cal. Aug. 15, 2022) (collecting cases).

The Court therefore acknowledges some tension in the allegations between the initial complaint and the FAC, but accepts Plaintiff's allegation in the FAC that to date there has not been a hearing regarding the custody of her children. *See* FAC at ¶¶ 31, 32, 40. Defendant's suggestion that the FAC "admit[s] she participated in multiple hearings," Dkt. No. 41 at 10, is simply inaccurate. The Court also notes that Plaintiff prepared the initial complaint pro se, which may explain some key distinctions between the initial and operative complaint.

### ii. FAC

Defendant next argues that even as currently alleged, Plaintiff has failed to state a due process claim. *See* Dkt. No. 41 at 10. Defendant urges that the FAC simply makes speculative allegations about his role in the investigation and does not allege that Defendant was the decision-maker who ultimately deprived Plaintiff of custody over her children. *Id.* In her opposition, Plaintiff asserts in a single sentence that she has adequately alleged a due process claim against Defendant based on "the failure of Defendant to provide notice and an opportunity for hearing before Defendant terminated Plaintiff's right to parent her children." Dkt. No. 45 at 1. Unfortunately, Plaintiff provides no factual or legal support for this assertion. The Court is thus left to decipher the basis of Plaintiff's claim from the allegations in the FAC.

Plaintiff appears to assert two bases for her due process claim. *First*, on May 7, 2020, Defendant and Mr. Magbag removed Plaintiff's children from her custody without notice and placed them in their father's custody. *See* FAC at ¶¶ 24, 26. As Plaintiff alleges, "Defendants violated the civil rights of Plaintiff by removing her children from her care without notice or hearing." *Id.* at ¶ 40. *Second*, on May 12, the Superior Court of Monterey County granted—and continues to grant—Plaintiff's ex-husband sole custody over her children without a hearing. *See id.* at ¶¶ 28–33.

The Court agrees that Plaintiff has not alleged any facts to support her contention that Defendant is somehow responsible for the Superior Court's custody decision. As the FAC itself indicates, Defendant did not make the ultimate decision about Plaintiff's custodial rights. Even as alleged, CPS—and not Defendant Barboza—concluded that Plaintiff was negligent in caring for her children. *See* FAC at ¶¶ 17, 23. Moreover, the Superior Court of Monterey County ultimately

5

issued the custody order granting her ex-husband "sole physical and legal custody with no visitation by Plaintiff." *See id.* at ¶¶ 28–29. Plaintiff suggests that the Court could not have granted her ex-husband exclusive custody absent Defendant's "unlawful actions," *id.* at 29, but makes no effort to explain the basis for this belief. Plaintiff therefore cannot state a due process claim based on the Superior Court's custody determinations.

On the other hand, the Court finds that Plaintiff has stated a due process claim based on the initial May 7 removal of the children from Plaintiff's custody. "The Fourteenth Amendment protects parents' fundamental right to participate in the care, custody, and management of their children." *James v. Rowlands*, 606 F.3d 646, 648 (9th Cir. 2010) (citing *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981)). Accordingly, "the Fourteenth Amendment's protection of parental rights prohibits the state from separating parents from their children without due process of law except in an emergency." *Id.* at 653 (quotation omitted). As the Ninth Circuit has explained:

> Officials may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.

*Id.* (quotation omitted).

Here, Plaintiff contends that "[o]n May 7, 2020, *without prior notice* to Plaintiff, Defendants BARBOZA and MAGBAG removed the children from Plaintiff's custody and forcibly placed them in the custody of their father." FAC at ¶ 24 (emphasis added). They also told Monterey County law enforcement that only the father had custody when one of the children tried to leave his father's care. *Id.* at ¶ 25. To justify such conduct, Defendant had to have reasonable cause to believe that the children were "in imminent danger of serious bodily injury." *Rowlands*, 606 F.3d at 648; *see also Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007) ("Officials, including social workers, who remove a child from its home without a warrant must have reasonable cause to believe that the child is likely to experience serious bodily harm *in*

6

*the time that would be required to obtain a warrant.*" (emphasis added)).

But the only reason given for the removal in the FAC is that CPS "wrote a report that stated that that the children were improperly cared for by their mother" because she did not provide them adequate psychiatric care for their anxiety. *See* FAC at ¶ 17. Plaintiff also contends that there was no evidence to support this conclusion. *Id.* Accepting Plaintiff's allegations as true, as the Court must at this stage, there was therefore no basis for Defendant to conclude that the children were at risk of "imminent danger of serious bodily injury" warranting their immediate removal from Plaintiff's custody without prior notice or authorization. At the time Defendant removed Plaintiff's children from her custody, CPS had only identified the need for additional psychiatric care. The lack of such care did not risk bodily injury or apparently any "imminent" harm. *See, e.g.*, *Demaree v. Pederson*, 887 F.3d 870, 878–81 (9th Cir. 2018) (recognizing constitutional violation where social workers allegedly removed children from home without court order or "reasonable cause to believe the children were at risk of serious bodily harm or molestation"); *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 791 (9th Cir. 2016) (finding social worker "lacked cause to forgo a warrant if they had adequate time to pursue one through the ordinary judicial process without risking [the child's] well-being"); *Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294–96 (9th Cir. 2007) (finding no exigency where children had bottle rot that required dental surgery and were living in unsanitary conditions). The Court therefore **DENIES** the motion to dismiss on this basis.

\*     \*     \*

The Court notes however, that Plaintiff's grievance appears to lie primarily with the Monterey Superior Court, which is not a party to this case. Therefore, even if Plaintiff were to prevail on her due process claim against Defendant, the Court has no authority to compel the Monterey Superior Court to hold a hearing regarding the custody of Plaintiff's children as Plaintiff requests.[2] *See* FAC at "Prayer for Relief."

---

[2] To be clear, the Court does not believe adding the Monterey Superior Court as a Defendant in this case would remedy this issue because both the court and any individual judges would very likely be immune. *See, e.g.*, *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987), *superseded by statute on other grounds* (applying state sovereign

7

### B. Immunity

#### i. Absolute Immunity

Even if Plaintiff has stated a due process claim, Defendant urges that he is entitled to absolute immunity. Dkt. No. 41 at 11–13. Defendant contends that "[c]ourts have consistently applied absolute immunity to section 1983 claims against social workers for the investigation phase of their job," including "investigating child abuse reports and taking child into custody without a court order." *See id.* (emphasis omitted). Defendant oversimplifies the state of the law on this issue.

As an initial matter, Defendant does not cite to a single case where absolute immunity has been applied to a police officer rather than to a social worker. *See id.* But even putting that aside, Defendant relies heavily on *Meyers v. Contra Costa County*, in which the Ninth Circuit said "social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." *Meyers v. Contra Costa Cnty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987). In the years since *Meyers*, the Court has further clarified:

> The factor that determines whether absolute immunity covers a social worker's activity or "function" under scrutiny is whether it was investigative or administrative, on one hand, or part and parcel of presenting the state's case as a generic advocate on the other. Absolute immunity is available only if the function falls into the latter category.

*Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1115 (9th Cir. 2017). Here, as explained above, the conduct at issue was the removal of the children from Plaintiff's custody on May 7. Defendant offers no explanation why such conduct is "quasi-prosecutorial" or related to "presenting the state's case as a generic advocate" in juvenile dependency proceedings. To the extent Defendant later states that "temporary custody determinations" are "subject to absolute immunity," Dkt. No.

---

immunity under the Eleventh Amendment to state superior court); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (describing judicial immunity); *cf. Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003) (describing *Rooker-Feldman* doctrine in context of attack on state court decision).

41 at 13, Defendant offers no authority to support this sweeping contention. In short, the Court finds that Defendant is not entitled to absolute immunity on this record.

### ii. Qualified Immunity

Defendant also urges that he is entitled to qualified immunity. Dkt. No. 41 at 13–16. Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). The doctrine thus intends to take into account the real–world demands on officials such as police officers in order to allow them to act "swiftly and firmly" in situations where the rules governing their actions are often "voluminous, ambiguous, and contradictory." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.*

To determine whether an officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct violated a constitutional right and (2) that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. The Ninth Circuit has recognized that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). On a motion to dismiss, the district court must consider "whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware in light of the specific context of the case." *Id.* at 1235 (quotation omitted).

As explained above, at least as alleged, Defendant violated Plaintiff's due process rights when he removed the children from Plaintiff's custody on May 7 without notice or a court order

1  and in the absence of exigent circumstances.  This right has been clearly established for many
2  years.  Twenty years prior to Defendant's alleged conduct in this case the Ninth Circuit explained
3  that officials "may not remove children from their parents' custody without a court order unless
4  there is specific, articulable evidence that provides reasonable cause to believe that a child is in
5  imminent danger of abuse."  *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000) (collecting
6  cases); *accord Rowlands*, 606 F.3d at 648.  Defendant does not address this precedent at all.
7  Rather, he reiterates that reasonable law enforcement officers would have assumed they were
8  entitled to absolute immunity for their investigatory conduct.  *See* Dkt. No. 41 at 15–16; Dkt. No.
9  48 at 8–9.  Defendant has not explained how absolute immunity applies to the facts as alleged in
10 this case, or how the purported belief regarding such a defense could be consistent with this
11 clearly established law regarding parents' due process rights.

12       Accepting Plaintiff's allegations as true, Defendant is not entitled to qualified immunity at
13 the motion to dismiss stage.  However, he may raise qualified immunity again at the summary
14 judgment stage following further factual development.

### IV. CONCLUSION

16       Accordingly, the Court **DENIES** the motion to dismiss.
17       The Court further **SETS** a case management conference on July 18, 2023, at 2:00 p.m.  All
18 counsel shall use the following dial-in information to access the call:
19       Dial-In:  888-808-6929;
20       Passcode:  6064255
21 All attorneys and pro se litigants appearing for a telephonic case management conference are
22 required to dial in at least 15 minutes before the hearing to check in with the courtroom deputy.
23 For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all
24 possible, parties shall use landlines.  The Court further **DIRECTS** the parties to meet and confer
25 and submit a joint case management statement by July 11, 2023.
26       The Court further **TERMINATES AS MOOT** Dkt. No. 9 the report and recommendation,
27 recommending that the Court dismiss the case for failure to timely serve Defendants and for
28 failure to prosecute, given that Defendant Barboza has appeared in this case and Plaintiff

dismissed the other Defendants.

**IT IS SO ORDERED.**

Dated: 6/20/2023

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge